OPINION
{¶ 1} David W. Husband, Jr., was indicted by a Franklin County grand jury in December 2001, charged with one count each of attempted murder and felonious assault, felonies of the first and second-degree, respectively. The charges arose as a result of Mr. Husband's alleged involvement in an altercation on September 4, 2001, culminating in the beating of Ellis W. Gregg. The facts surrounding the incident are discussed below.
 {¶ 2} Mr. Husband was convicted of both charges at the conclusion of a jury trial. Pursuant to an entry journalized September 17, 2002, the trial court sentenced him to two concurrent four-year prison terms.
 {¶ 3} David W. Husband, Jr. ("appellant") has timely appealed, assigning three errors for our consideration:
 {¶ 4} "I. The trial court committed plain error in failing to instruct the jury separately on principal and accomplice liability, thereby depriving Appellant of his rights under Crim.R. 31 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 5} "II. The trial court erred and thereby deprived Appellant of Due Process of Law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by overruling Appellant's Crim.R. 29 motion for judgment of acquittal, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt each and every element of attempted murder.
 {¶ 6} "III. The trial court erred and thereby deprived Appellant of Due Process of Law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding Appellant guilty, as the verdict for the charge of attempted murder was against the manifest weight of the evidence."
 {¶ 7} We turn first to appellant's second and third assignments of error which collectively challenge the sufficiency and manifest weight of the evidence underlying his attempted murder conviction. Because the claimed errors require a similar review of the evidence and analyses thereof, we address them jointly.
 {¶ 8} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In Thompkins, the court explained at length the distinctions between the two standards:
 {¶ 9} "With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486 ***. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, *** citing Jackson v. Virginia (1979),443 U.S. 307 ***."
 {¶ 10} When reviewing the sufficiency of the evidence to support a conviction, an appellate court must review the record to determine "whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Supreme Court set forth the stringent standard of review to be applied in a sufficiency analysis:
{¶ 11 "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 12} In contrast, as explained in Thompkins, supra, a manifest weight analysis is slightly different:
{¶ 13] "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 ***. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 {¶ 14} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs,457 U.S. at 42 ***. See, also, State v. Martin (1983), 20 Ohio App.3d 172,175 *** (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."
 {¶ 15} Pursuant to the foregoing standards, we examine the record in a light most favorable to the prosecution to determine if the prosecution sufficiently proved beyond a reasonable doubt each element of attempted murder or, alternatively, whether the jury "lost its way" in convicting appellant such that a manifest miscarriage of justice occurred.
 {¶ 16} In order to sustain appellant's attempted murder conviction, the record must sufficiently establish that the prosecution proved certain statutory elements.
 {¶ 17} "Attempt" is proscribed by R.C. 2923.02(A) as follows:
 {¶ 18} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 19} "Complicity" is defined in R.C. 2923.03(A) as follows:
 {¶ 20} "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 21} "(1) Solicit or procure another to commit the offense;
 {¶ 22} "(2) Aid or abet another in committing the offense;
 {¶ 23} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 {¶ 24} "(4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 25} R.C. 2903.11 defines "felonious assault,"[1] in pertinent part, as follows:
 {¶ 26} "(A) No person shall knowingly do either of the following:
 {¶ 27} "(1) Cause serious physical harm to another * * *;
 {¶ 28} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 29} R.C. 2903.02 defines "murder" as follows, in relevant part:
 {¶ 30} "(A) No person shall purposely cause the death of another * * *.
 {¶ 31} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 {¶ 32} A brief recitation of significant portions of the transcript of proceedings reveals the following critical evidence presented to the jury.
 {¶ 33} Appellant testified on his own behalf. He acknowledged his participation in the beating, but claimed that he only kicked Ellis Gregg in the stomach after Gregg was unconscious on the ground. Appellant specifically denied kicking Gregg in the head. However, several other witnesses contradicted appellant's version of events, testifying that appellant had, in fact, kicked Gregg in the head.
 {¶ 34} Under the circumstances, the jury had before it information which could constitute complicity in a crime or which could make appellant guilty as a principal offender depending on the harm he caused and his intent. Based upon the evidence before it, the jury acted well within its province in finding that appellant purposely attempted to cause Ellis Gregg's death.
 {¶ 35} Because the record contains sufficient evidence to support appellant's attempted murder conviction beyond a reasonable doubt, we overrule the second assignment of error.
 {¶ 36} We also overrule the third assignment of error, as the record does not support a finding that the jury "clearly lost its way" in convicting appellant such that a "manifest miscarriage of justice" occurred.
 {¶ 37} By his first and final assignment of error, appellant contends that the trial court erred in failing to instruct the jury separately on principal and accomplice liability, thereby compromising both his convictions for felonious assault and attempted murder.
 {¶ 38} Appellant characterizes the court's jury instructions as "confusing" because the trial court failed to "instruct the jury separately on the complicity and principal liability for each count in the indictment." The "extremely confusing" instructions, appellant argues, leave open the "significant possibility" of a " `patchwork' or less than unanimous verdict" with respect to the jury's factual determination of whether appellant acted as a principal or an accomplice in each charge or both — perhaps as a principal under one theory and an accomplice under the other. (Brief of Appellant at 3.)
 {¶ 39} As acknowledged by appellant's counsel on appeal, trial counsel did not object to the charge given to the jury, so we can sustain the first assignment of error only if plain error occurred. See Crim.R. 52(B). Given the state of this record, we cannot find the existence of plain error.
 {¶ 40} In State v. Barnes (2002), 94 Ohio St.3d 21, 2002-Ohio-68, the Supreme Court of Ohio recently reiterated the well-established plain error standard by which we are bound in reviewing this claimed error:
 {¶ 41} "Under Crim.R. 52(B), `plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. State v. Hill (2001),92 Ohio St.3d 191, 200 * * *. Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. State v. Sanders (2001),92 Ohio St.3d 245, 257, * * * citing State v. Keith (1997),79 Ohio St.3d 514, 518 * * *. Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. See, e.g., Hill, 92 Ohio St.3d 191 * * *; State v. Moreland (1990), 50 Ohio St.3d 58, 62 * * *; State v. Long (1978), 53 Ohio St.2d 91
* * *, paragraph three of the syllabus." Barnes, supra at 27.
 {¶ 42} It is equally well-established that the Ohio Supreme Court has consistently "* * * acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' Barnes, id., quoting Long, supra, paragraph three of the syllabus. See, also, State v. Noling (2002), 98 Ohio St.3d 44,2002-Ohio-7044, ¶ 62.
 {¶ 43} After Mr. Gregg was rendered unconscious as a result of Antonio Holman striking him in the head with a rock, appellant kicked Gregg repeatedly. A neighbor described appellant as kicking Gregg both on the left and the right side of the head. The kicks were described as similar to kicks executed by a person kicking a soccer ball.
 {¶ 44} Medical testimony clearly established that Mr. Gregg suffered serious physical harm, but could not neatly distinguish the harm inflicted by Antonio Holman's blows and kicks to the head from the physical harm caused by appellant's kicks.
 {¶ 45} For purposes of complicity to felonious assault, there was sufficient evidence presented that appellant clearly acted with the kind of culpability required for committing felonious assault. He also aided and abetted the serious physical harm inflicted upon Mr. Gregg. Accordingly, given the Crim.R. 52(B) standards delineated above, no plain error could exist with respect to the jury instructions as to felonious assault/complicity in felonious assault.
 {¶ 46} The first assignment of error is overruled with respect to the charge of felonious assault/complicity in felonious assault.
 {¶ 47} For an attempted murder charge to be proven, the state was required to demonstrate that appellant purposely engaged in conduct which, if successful, would have caused the death of Mr. Gregg. Given the evidence clearly demonstrating that appellant purposely and repeatedly kicked an unconscious Gregg in the head and since vigorous kicks to a person's head can cause death, a jury could reasonably find that appellant was attempting to kill Gregg by kicking him in the head. Accordingly, we find the balance of the first assignment of error to be without merit as well.
 {¶ 48} Appellant has not shown that the jury instructions were outcome-determinative. In other words, we cannot say that a different jury charge would have resulted in an acquittal of appellant. Therefore, no plain error has been demonstrated.
 {¶ 49} The first assignment of error is overruled.
 {¶ 50} All three assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
BOWMAN and BROWN, JJ., concur.
[1] Although appellant does not directly challenge the sufficiency or manifest weight of the evidence underlying his felonious assault conviction, we nonetheless include it here for purposes of fully addressing all three assignments of error.